UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONNEATTA WYNTER,

                         Plaintiff,

v.                                                          3:14-CV-00347
                                                            (GTS)
CAROLYN W. COLVIN,
Commissioner of Social Security,

                         Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.,
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                     KAREN T. CALLAHAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Ronneatta Wynter

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born on November 28, 1981. She completed two years of college and earned a certification in Hotel Management. Plaintiff has worked as a customer service representative and a factory worker. Generally, Plaintiff's alleged disability consists of bipolar disorder, depression, back problems, and problems with her right arm. Plaintiff's alleged disability onset date is July 12, 2009, and her date last insured is September 30, 2011.

## B. Procedural History

On January 26, 2011, Plaintiff applied for Social Security Disability Insurance Benefits and Supplemental Security Income. Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 11, 2012, Plaintiff appeared by video before the ALJ, F. Patrick Flanagan. (T. 27-60.) On January 11, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-26.) On February 24, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 14-22. ) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2011, and had not engaged in substantial gainful activity since July 12, 2009, her alleged onset date. (T. 14.) Second, the ALJ found that Plaintiff's chronic back pain, dysthymic disorder, anxiety-related disorder, and substance abuse disorder are severe impairments. (T. 14-15.) Third, the ALJ found that Plaintiff's severe impairments, alone

or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 15-16.) The ALJ considered Listings 1.04, 12.04, 12.06, and 12.09. Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for six hours in an eight-hour workday. She is able to follow and understand simple directions and instructions and perform simple tasks independently. She is able to maintain attention and concentration and a regular schedule. She is able to learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others. She is capable of adequate stress management.

(T. 16-20.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 20.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 20-21.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff essentially argues that the ALJ erred in (a) assessing the severity of Plaintiff's psychiatric impairments, (b) weighing the medical opinions of Plaintiff's mental limitations, and (c) determining Plaintiff's mental RFC. (Dkt. No. 12, at 9-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred at step five of the sequential analysis by not obtaining a vocational expert opinion and did not sustain his burden of proving that there are a significant number of jobs in the national, state or local economy that Plaintiff can perform. (*Id.* at 13-17.) Third, and finally, Plaintiff argues that the ALJ's RFC finding as to Plaintiff's physical impairments is unsupported by substantial evidence. (*Id.* at 17-19.)

In response, Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly assessed the record evidence in determining the severity of Plaintiff's impairments and Plaintiff's RFC. (Dkt. No. 13, at 5-16

[Def.'s Mem. of Law].)  Second, and finally, Defendant argues that the ALJ appropriately relied on the framework of Medical-Vocational Rule 203.29 at step five.  (*Id.* at 17-19.)

## II.      RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## III.    ANALYSIS

### A.    Whether the ALJ Properly Assessed the Severity of Plaintiff's Psychiatric Impairments

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 5-7 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended to screen out only the truly weakest of cases.  *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]).  At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of his condition.  20 C.F.R. § 416.912(a); *Bowen*, 482 U.S. at 146.

Here, the ALJ found that Plaintiff's dysthymic disorder and anxiety-related disorder were severe impairments.  (T. 14.)  Plaintiff argues that the ALJ erred in assessing the severity of Plaintiff's psychological impairments, and specifically appears to argue that the ALJ failed to find Plaintiff's bipolar disorder severe.  (Dkt. No. 12, at 9-13 [Pl.'s Mem. of Law].)  However, the ALJ notes that, in determining whether an individual is disabled, "what the impairment is called is of no real consequence; rather how a given impairment affects mental functioning is the central inquiry under the [Social Security] Act.  By finding the claimant to have a 'severe' mental impairment however characterized, all symptoms affecting her mental functioning have been considered."  (T. 14-15.)  The ALJ further noted that, "[d]uring any given encounter,

mental health professionals have given the claimant various diagnoses and characterized her mental impairment in various ways." (T. 15.)

In any event, where "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010). *See also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Here, the ALJ did not deny benefits based on the lack of a severe impairment. To the contrary, the ALJ determined that Plaintiff had severe impairments, including severe psychiatric impairments. (T. 834-35.) Accordingly, even if the ALJ's failure to find additional psychiatric impairments severe at step two of the sequential analysis is error, it is harmless. *Ellis v. Comm'r of Soc. Sec.*, 11-CV-2305, 2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012). Therefore, remand is not necessary on this basis.

## B. Whether the ALJ Erred in Assessing the Medical Opinions of Record Regarding Plaintiff's Mental Limitations

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 5-16 [Def.'s Mem. of Law].) To those reason, the Court would add the following analysis.

The ALJ must consider every medical opinion of record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other

substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527[c], [e]); *see also Stytzer v. Astrue*, 07-CV-0811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (finding that, in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Here, Plaintiff argues that the ALJ erred in weighing the opinions of Plaintiff's mental limitations provided by the following individuals: consultative examiner, Dr. Sara Long, Ph. D.; independent examiner, Dr. Mary Ann Moore, Psy. D.; and treating physician, Dr. Darlene Denzien, D.O. (Dkt. No. 12, at 13-21 [Pl.'s Mem. of Law].) Plaintiff argues that the ALJ further erred in failing to weigh the opinion of treating counselor, Valerie Jones-Giles, L.C.S.W. (*Id.*) Defendant counters that the ALJ properly evaluated the medical opinion evidence. (Dkt. No. 13, at 5-16 [Def.'s Mem. of Law].)

First, Plaintiff argues that the ALJ erred in affording great weight to Dr. Long's opinion because the ALJ did not apply the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c). (Dkt. No. 12, at 13-15 [Pl.'s Mem. of Law].) Plaintiff argues that, with regard to Dr. Long's opinion, the ALJ failed to address applicable factors including (1) the examining relationship, (2) supportability, (3) consistency, (4) specialization, and (5) other factors.

The ALJ concluded that Dr. Long's opinion was generally supported by a preponderance of the reliable record evidence, including Plaintiff's reported level of activity and lack of significant psychiatric treatment. (T. 19.) Contrary to Plaintiff's assertion, it is apparent that the ALJ considered the applicable regulatory factors by citing (1) Dr. Long's thorough examination of Plaintiff on May 27, 2011, (2) Dr. Long's examination notes that supported her opinion, (3) Dr. Long's extensive professional expertise as a psychologist, (4) other record evidence that was consistent with Dr. Long's opinion, and (5) Dr. Long's extensive disability program expertise. (T. 15, 17-19.)

For example, the ALJ cited Dr. Long's examination notes that Plaintiff presented to the consultative examination as cooperative with good social skills and appropriate eye contact and accurately completed serial threes. (T. 15.) Dr. Long observed that Plaintiff was well oriented

and exhibited fluent and clear speech with (1) adequate expressive and receptive language skills, (2) coherent and goal-oriented thought processes with no indication of sensory or thought disorder, (3) average cognitive functioning, and (4) a good fund of knowledge. (T. 401-92.)

Additionally, the ALJ discussed record evidence that was consistent with Dr. Long's opinion, including Plaintiff's May 2, 2012, psychiatric evaluation by treating psychiatrist, Nalini Naik, M.D., at Broome County Community Mental Health Services ("BCCMHS"). (T. 15, 17-19.) The ALJ noted that Dr. Nalini's evaluation of Plaintiff yielded normal results aside from an observation that Plaintiff's mood was depressed. (T. 18.) The ALJ further noted Dr. Naik's observations that Plaintiff was "alert and oriented to person, place, and time and that her memory is intact and her insight and judgment are fair." (T. 15.) As the ALJ referenced, Dr. Naik assessed Plaintiff with a global assessment of functioning score of 60, demonstrating only mild to moderate symptoms. (T. 17.) Finally, the ALJ noted that State agency psychological consultant Dr. Harding reiterated Dr. Long's opinion of Plaintiff's mental limitations. (T. 19.)

The ALJ's reliance on the opinion of consultative examiner Dr. Long was not error. An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")

Additionally, the ALJ appropriately assessed Dr. Long's opinion by citing her thorough examination of Plaintiff, supportive examination notes, specialized expertise in psychology,

extensive knowledge of disability programs, and other record evidence that was consistent with Dr. Long's opinion.  (T. 15, 17-19.)  20 C.F.R. §§ 404.1527 (c), 416.927(c).  Notably, where an ALJ's reasoning and adherence to the Regulations are clear, he is not required to review explicitly each and every factor of the Regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").  Therefore, the ALJ's determination that Dr. Long's opinion was entitled to great weight was proper.

Second, Plaintiff argues that the ALJ erred in assigning no weight to the opinion of independent psychological examiner Dr. Moore's opinion that Plaintiff was very limited in the abilities to perform complex tasks independently, attend to a routine, and maintain a schedule, and had additional moderate mental limitations.  (Dkt. No. 12, at 19-20 [Pl.'s Mem. of Law].)  Defendant counters that the ALJ appropriately evaluated Dr. Moores's opinion, noting that Dr. Moore's one-time assessment was inconsistent with Plaintiff's treatment records from BCCMHS.  (Dkt. No. 13, at 9 [Def.'s Mem. of Law].)  Defendant notes that Dr. Moore's mental status examination indicated that Plaintiff's general appearance, thought process, mood, affect, recent and remote memory skills, and cognitive functioning were all normal.  (*Id.* at 8.)  In addition, Defendant notes that Dr. Moore opined that Plaintiff had no functional limitations with following, understanding, and remembering simple instructions and directions.  (*Id.* at 8-9.)

In explaining his decision to afford Dr. Moore's opinion no weight, the ALJ noted that the opinion consisted of "several pages of history and complaints and an 11-item check box assessment, diagnoses of impairments not found anywhere else in the record, and an assessment

form that does not allow for any rating between normalcy and disability." (T. 9.) Further, the ALJ reasoned that Dr. Moore's opinion "appears to be based largely on subjective complaints, including apparent misinformation regarding hallucinations and other symptoms inconsistently reported by the claimant." (T. 9-10.)

The ALJ noted that Plaintiff's mental status examinations by treating and examining sources, including Dr. Moore, "consistently revealed normal results despite reports being rife with complaints." (T. 17-18.) Dr. Moore observed that Plaintiff's affect was appropriate to her speech and thought content, that Plaintiff's cognitive function was in the average range, and that Plaintiff's thought process was "coherent and goal directed with no evidence of hallucinations, delusions, or paranoia." (T. 466.) Further, Dr. Moore indicated that Plaintiff's recent and remote memory skills were intact, observing that Plaintiff accurately recalled three out of three objects immediately, three out of three objects after five minutes, six digits forward, and four digits backward. (T. 446.)

Based on this evidence, the ALJ's determination that Dr. Moore's opinion was entitled to no weight was supported by substantial evidence.

Third, Plaintiff argues that the ALJ erred in assigning little to no weight to the opinion of treating physician Dr. Denzien. (Dkt. No. 12, at 17-18 [Pl.'s Mem. of Law].) On September 23, 2010, Dr. Denzien completed a one-page medical assessment form indicating that Plaintiff was capable of performing "no work activity." (T. 394.) On October 29, 2012, Dr. Denzien opined that Plaintiff's concentration and ability to sustain work pace were "very poor due to her mental health issues." (T. 523.) Dr. Denzien further opined that Plaintiff had medium to marked limitations in concentration and persistence, and medium to extreme limitations in interaction with others and adaptation/stress. (T. 524-25.) Dr. Denzien concluded that Plaintiff's

12

symptoms and treatment of bipolar disorder would reasonably cause her to miss more than three workdays per month.  (T. 525.)

Plaintiff argues that the ALJ violated the treating physician rule by assigning limited to no weight to the mental opinion of Plaintiff's treating physician Dr. Denzien.  (Dkt. No. 12, at 17-18 [Pl.'s Mem. of Law].)  Defendant counters that the ALJ properly afforded no weight to Dr. Denzien's September 23, 2010, opinion that Plaintiff was capable of performing no work activity, because the opinion is unsupported by objective evidence and is a statement on an issue reserved for the Commissioner.  (Dkt. No. 13, at 10-11 [Def.'s Mem. of Law].)  Additionally, Defendant argues that the ALJ properly afforded limited weight to Dr. Denzien's October 29, 2012, opinion of Plaintiff's mental limitations.  (*Id.* at 11-12.)  Defendant notes that Dr. Denzien is Plaintiff's primary care physician, not a psychiatrist, and that her opinion was unsupported by her treatment notes.  (*Id.* at 11-12.)  Additionally, the ALJ noted that the mental limitations opined by Dr. Denzien "appear to be reliant on Plaintiff's subjective complaints with no objective or observable findings to support the assessed limitations."

Indeed, there is nothing in Dr. Denzien's treatment notes to support Dr. Denizen's opinion that Plaintiff had medium to marked limitations in concentration and persistence, or would likely miss more than three workdays per month due to her mental condition.  (T. 219-351, 527-89.)  Further, as the ALJ observed elsewhere in his decision, the mental limitations opined by Dr. Denzien are inconsistent with Plaintiff's mental status examinations "performed by both treating sources and consultative examiners [that] have consistently revealed normal results."  (T. 17-18.)

For these reasons, the ALJ properly afforded less than controlling weight to treating physician Dr. Denzien's opinions of Claimant's mental impairments.

Fourth, Plaintiff argues that the ALJ erred in failing to discuss the October 19, 2012, opinion of treating counselor Ms. Jones-Giles. (Dkt. No. 12, at 19-20 [Pl.'s Mem. of Law].) Defendant counters that the questionnaire opinion is not entitled to any special weight, citing the Appeals Council's review of the evidence and finding that there was no support for the limitations opined by Ms. Jones-Giles. (Dkt. No. 13, at 9-10 [Def.'s Mem. of Law].)

To be sure, the Court is unable to ascertain whether the ALJ considered Ms. Jones-Giles' opinion because the ALJ did not address it in his decision. (T. 12-22, 591-93.) However, in assessing Plaintiff's mental impairments, the ALJ cited treatment records from Ms. Jones-Giles and other treating sources at BCCMHS that were inconsistent with Ms. Jones-Giles' opinion. (T. 15, 18.) For example, the ALJ discussed Plaintiff's May 2, 2012, mental evaluation by BCCMHS psychiatrist Nalini Naik, M.D., that yielded normal results aside from an observation that Plaintiff's mood was depressed. (T. 18.) The ALJ further noted Dr. Naik's observations that Plaintiff was alert and oriented to person, place, and time, that Plaintiff's memory was intact, and that Plaintiff's insight and judgment were fair. (T. 15.) As the ALJ referenced, Dr. Naik assessed Plaintiff with a global assessment of functioning score of 60, demonstrating only mild to moderate symptoms. (T. 17.)

Though the ALJ did not expressly discuss Ms. Jones-Giles' opinion in the decision, he nonetheless discussed Plaintiff's treatment records from BCCMHS that Ms. Giles' opinion was based upon, and noted evidence in the BCCMHS treatment records that was inconsistent with Ms. Jones-Giles' opinion. (T. 15, 17-18.) "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* 10-CV-1019, 2011

WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983) [internal quotation marks omitted]).

For these reasons, the ALJ did not err in evaluating the medical opinions of record regarding Plaintiff's mental abilities and limitations. Consequently, remand is not necessary on this basis.

### C.      Whether the ALJ Properly Assessed Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 14-16 [Def.'s Mem. of Law].) The Court would only add the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a

claimant's impairments may affect his ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence and contrary to the medical evidence. (Dkt. No. 12, at 10, 22 [Pl.'s Mem. of Law].) Defendant disagrees. (Dkt. No. 13, at 5-16 [Def.'s Mem. of Law].)

Here, the ALJ determined that Plaintiff has the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently, sit for six hours, and stand/walk for six hours in an eight-hour workday. (T. 16.) In addition, the ALJ found that Plaintiff is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and manage stress adequately. (T. 16.) In support of his RFC determination, the ALJ cites the opinions of consultative examiners Dr. Pranab Datta, M.D., and Dr. Long as well as State agency non-examining psychological consultant, Dr. Harding. (T. 18-20.) For the ease of analysis, the physical and mental portions of the ALJ's RFC determination will be discussed separately.

First, the ALJ's mental RFC determination is supported by the May 27, 2011, opinion of consultative examiner Dr. Long. (T. 400-04.) After an extensive examination and evaluation of Plaintiff, Dr. Long concluded that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and manage stress adequately. (T. 402.) Additionally,

the ALJ cited the June 28, 2011, mental RFC assessment from State agency psychological examiner Dr. Harding that essentially adopts Dr. Long's opinion. (T. 423, 429.) Dr. Harding completed a Psychiatric Review Technique form on June 28, 2011, at which time Dr. Harding opined that Plaintiff had moderate limitations in activities of daily living, mild limitations in social functioning, and mild limitations in concentration, persistence, or pace and there was insufficient information in the record to determine whether Plaintiff had repeated episodes of decompensation. (T. 423.)

The ALJ also made a specific finding regarding Plaintiff's limitations in each of the functional areas set forth in 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). (T. 15-16.) Specifically, the ALJ determined that Plaintiff has (1) moderate limitations in activities of daily living, (2) mild limitations in social functioning, (3) mild limitations in concentration, persistence, or pace, and (4) no episodes of decompensation that have been of extended duration. (T. 15-16.) Accordingly, the ALJ's mental RFC determination is supported by substantial evidence.

Second, the ALJ's physical RFC finding is supported by consultative examiner Dr. Datta's May 27, 2011, opinion and examination notes. (T. 395-96.) Dr. Datta opined that Plaintiff (1) had mild limitations with gross motor activities using the right upper limb, (2) had mild limitations in prolonged sitting, standing, and walking, and (3) should avoid heavy lifting, pushing, pulling, or carrying. (T. 398.) The ALJ noted that some of the limitations opined by Dr. Datta are supported by objective examination results of record, particularly Plaintiff's inability to perform heavy lifting. (T. 19.) However, the ALJ determined that there is no support for limitations in sitting, standing, walking, and activities with the right upper extremity. (T. 19.) In support of this finding, the ALJ cited evidence from Dr. Datta's examination notes

suggesting Claimant had greater abilities in these activities than opined by Dr. Datta.  (T. 17, 396.)

For example, the ALJ referenced Dr. Datta's observations that Plaintiff exhibited full flexion of the cervical spine, full range of motion of other joints, no trigger points, normal gait and stance, and the ability to walk on her heels and toes.  (T. 17, 396.)  Dr. Datta further observed that Plaintiff (1) did not need help changing for the exam or getting on and off the examination table, (2) had minimal difficulty rising from a chair, declined lumbar range of motion  and squat tests, and (3) had normal neurological exam results.  (*Id.*)

The ALJ noted that the record has no imaging studies to confirm a particular diagnosis with regard to Plaintiff's back pain, and Plaintiff has not been referred to an orthopedic specialist or neurosurgeon for treatment of her symptoms.  (T. 17.)  Additionally, the ALJ noted that Plaintiff's described daily activities were inconsistent with her complaints of disabling symptoms and limitations.  (T. 18.)  For example, Plaintiff reported that she performs some household chores and provides care for her dog, 12-year old child, and one-year old infant.  (T. 7.)  Plaintiff testified that her son weighs 18 pounds and she is able to lift him to change his diapers.  (T. 7.)  The ALJ observed that, although Plaintiff testified she has difficulty getting up and down to care for her young son, she was able to alternate between standing and sitting several times during the hearing.  (T. 7.)

Regarding Plaintiff's reported low thoracic upper lumbar strain from a fall at work, treating physician Dr. Denzien noted on, March 10, 2009, "It has been three or four years since she even complained about it.  The pain does not radiate or cause her any numbness or tingling." (T. 246.)  Dr. Denzien indicated that Plaintiff's complaint of right shoulder pain dates back to the same injury, and x-rays taken at that time were found to be normal.  (T. 246.)  On May 27, 2011,

18

consultative examiner Dr. Datta observed that Plaintiff was talkative, appeared to be in no distress, moved the right upper limb quite well, her gait was normal, and her general condition was stable.  (T. 398.)  Dr. Datta further observed that Plaintiff's strength was five out of five in the upper and lower extremities, hand and finger dexterity was intact, and grip strength was five out of five bilaterally.  (T. 397-98.)

Therefore, the ALJ's RFC is supported by substantial evidence.  Accordingly, remand is not necessary on this basis.

### D. Whether the ALJ Erred at Step Five by Failing to Obtain the Opinion of a Vocational Expert

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 17-19 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining that there are jobs in the national economy that Plaintiff can perform.  (T. 20-21.)  Plaintiff argues that the ALJ erred in failing to obtain a vocational expert opinion because, due to Plaintiff's non-exertional limitations, reliance on the Grids was inappropriate.  (Dkt. No. 12, at 21-22 [Pl.'s Mem. of Law].)  Defendant counters that the ALJ's decision at step five was based on substantial evidence, and reliance on the Grids is proper even where nonexertional limitations exist.  (Dkt. No. 13, at 17-19 [Def.'s Mem. of Law].)

At step five of the sequential analysis, the Commissioner can usually meet her burden to establish that, if a plaintiff is unable to perform his past work, there is other work which he could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids."  *Baldwin v. Astrue*, 07-CV-6958, 2009

WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant nonexertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606).

However, "the mere existence of a nonexertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp*, 802 F.2d at 603). Where, as here, an ALJ determines that a plaintiff's mental condition does not limit her ability to perform unskilled work, reliance on the Grids without benefit of a vocational expert is permissible. *Zabala,* 595 F.3d at 411. Accordingly, Plaintiff's argument that remand is required on this basis is without merit.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: September 28, 2015
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge